J-S46038-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARRYL ENGLISH | : | |
| | : | |
| Appellant | : | No. 1208 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 22, 2019
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006223-2017

BEFORE: BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:           **FILED JANUARY 12, 2021**

Darryl English ("English") appeals from the judgment of sentence imposed following his conviction of aggravated assault, persons not to possess firearms, and possession of an instrument of crime.[1] We affirm.

In its Opinion, the trial court summarized the factual and procedural history underlying the instant appeal, which we adopt as though fully set forth

---

[1] *See* 18 Pa.C.S.A. §§ 2702(a)(1), 6105(a)(1), 907.

herein. **See** Trial Court Opinion, 10/30/19, at 1-7.[2]

On appeal, English raises the following issues for our review:

1. Were [English's] convictions supported by sufficient evidence?

2. Were [English's] convictions against the weight of the evidence?

3. Did the trial court err i[n] denying [English's] Motion for Mistrial after a sequestration violation?

4. Did the trial court err in allowing the contents of an anonymous tip into evidence?

5. Did the trial court err when it inappropriately inserted itself into the trial and criticized [English's] trial counsel?

6. Did the trial court abuse its discretion in sentencing when it sentenced [English] outside the guidelines?

Brief for Appellant at 5 (issues renumbered for ease of disposition).

_____

[2] We note that the tenth day following the imposition of sentence was Monday, March 4, 2019. **See** Pa.R.Crim.P. 720(a)(1). The docket indicates that English filed his Post-Sentence Motion on Tuesday, March 5, 2019. However, our review reflects that the Post-Sentence Motion contains a time-stamped filing date of Saturday, March 2, 2019. **See generally** Pa.R.Crim.P. 114(C)(2) (requiring docket entries to contain, inter alia, "the date of receipt in the clerk's office of the order or court notice[.]"); Pa.R.Crim.P. 576(A)(3) (stating that when a document for which filing is required "is received by the clerk of courts, the clerk **shall time stamp it with the date of receipt and make a docket entry reflecting the date of receipt**, and promptly shall place the document in the criminal case file." (emphasis added)); Pa.R.Crim.P. 113(C)(8) (providing that docket entries in criminal case must include "all other information required by Rules 114 and 576."). Under these circumstances, where the time stamp on English's Post-Sentence Motion reflects a filing date of March 2, 2019, we will consider his Post-Sentence Motion, and the resulting appeal, to be timely filed.

In his first claim, English argues that the evidence presented at trial was insufficient to support his convictions. *Id.* at 25. In particular, English claims that the Commonwealth failed to establish his identity as the perpetrator. *Id.* In support of his claim, English asserts that

> [t]he Commonwealth failed to provide sufficient evidence to convict [English] on any of the charges. The Commonwealth did not test the blood at the crime scene to determine if another person with a different blood type committed the shooting. They failed to DNA or fingerprint test any of the ammunition found at the crime scene. The only evidence the Commonwealth supplied … was one identification from a photo array and cell phone data.

*Id.* at 26.

Initially, we observe that English's argument pertaining to this issue is largely underdeveloped. English failed to identify his convictions or set forth the relevant elements of the offenses. Further, beyond a reference to this Court's standard of review in considering a sufficiency challenge, English failed to include citations to or discussion of relevant legal authorities. *See* Pa.R.A.P. 2119(a) (providing that an appellant's argument shall include "such discussion and citation of authorities as are deemed pertinent."). Accordingly, we could deem English's first issue waived. *See Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) (concluding that appellant waived his claim by failing to adequately develop his argument or provide citation to and discussion of relevant authority); *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (concluding that appellant waived challenge to the sufficiency of the evidence where he failed to set forth the elements of the

crimes he was convicted of, identify which elements were not met, or cite to legal authority).

Nevertheless, the trial court set forth our standard of review and the elements of each of English's offenses, summarized the evidence supporting English's convictions, and concluded that the sufficiency challenge lacks merit. *See* Trial Court Opinion, 10/30/19, at 8-9. Importantly, the victim identified English as the shooter in a photo array, in his statement to police, and at trial. *Id.* at 8; *see also Commonwealth v. Johnson*, 180 A.3d 474, 478 (Pa. Super. 2018) (stating that "[a] victim's in-court testimony, identifying the defendant as the perpetrator of a crime, is by itself sufficient to establish the identity element of that crime."). Because the trial court's conclusions are sound and supported by the record, we affirm on the basis of its Opinion in denying English relief on this claim. *See* Trial Court Opinion, 10/30/19, at 8-9.

In his second claim, English contends that his convictions were against the weight of the evidence, as "[t]here is very little evidence against [English] in this matter." Brief for Appellant at 22. English argues that the victim was unable to provide a description of his assailant to police at any time prior to the photo array. *Id.* at 24. *But see id.* n.2 (wherein English concedes that the victim was unable to speak with police, as he had been shot in the face). According to English, the victim's identification should not be given any weight, because the victim most likely would have seen English in the area

- 4 -

prior to the shooting, and would have been able to identify him without use of the photo array. *Id.* at 24-25. English also claims that the cell phone data evidence should not be given weight because English lives in the area of the crime scene, so the location data does not establish his connection to the crime. *Id.* at 25.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Bright*, 234 A.3d 744, 749 (Pa. Super. 2020) (citation omitted).

Again, English failed to include citation to and discussion of authorities pertinent to his claim, beyond a recitation of this Court's standard for reviewing challenges to the weight of the evidence. Thus, we could deem this issue waived. *See* Pa.R.A.P. 2119(a); *Samuel*, *supra*; *Gibbs*, *supra*.

The trial court nevertheless addressed English's weight claim, and concluded that it lacks merit. *See* Trial Court Opinion, 10/30/19, at 10. The trial court observed that the victim's testimony that he was shot outside of English's home was consistent with his pre-trial identification of English as the shooter. *Id.* From the verdict, it is apparent that the jury found the victim's

testimony to be credible. English essentially asks us to reweigh the evidence and reassess the victim's credibility, tasks which we cannot undertake. *See* *Bright*, *supra*; *see also Commonwealth v. Sanchez*, 36 A.3d 24, 39 (Pa. 2011) (stating that "[o]n appeal, this Court cannot substitute its judgment for that of the jury on issues of credibility, or that of the trial judge respecting weight."). Thus, English is not entitled to relief on this claim.

In his third claim, English asserts that the trial court erred in denying his Motion for Mistrial after a sequestration violation. Brief for Appellant at 17. According to English, a conversation took place between Detective Ronald Palumbo ("Detective Palumbo"), the prosecutor, Detective Edward Keppol ("Detective Keppol") and the victim;[3] at that time, Detective Palumbo had already testified, but Detective Keppol and the victim had not. *Id.* at 18. English argues that the trial court did not permit trial counsel to investigate the violation, or to call any witnesses to determine the extent of the violation. *Id.* Additionally, English claims that

> [a]s a result of this conversation, Detective Keppol testified to a crucial piece of evidence in this case that almost certainly swayed the jury. The [victim] told him, during the sequestration violation, that a .45 caliber bullet was still lodged in his neck. This was the same caliber bullet recovered from [English's] doorstep. Additionally, [the victim] testified that he had dropped the .22 caliber bullets onto Patton Street the night of the incident. [The victim] never mentioned this fact to police during their

---

[3] In the first mention, English refers to the final party to this conversation simply as "the witness who had not yet testified." Brief for Appellant at 18. However, from the remainder of English's argument, it appears that this witness was the victim.

- 6 -

investigation or during his grand jury testimony. The existence of these previously unaccounted-for bullets was a critical part of [English's] case. The revelation of this testimony that occurred after the sequestration violation demonstrates the impact of the violation on the witnesses and the trial. [English] was undoubtedly prejudiced by this testimony and not being allowed time to adequately investigate the violation and any new information stemming from it.

*Id.* at 18-19.

Where violation of a sequestration order occurs, the remedy selected is within the sound discretion of the trial court. In exercising discretion, the trial court should consider the seriousness of the violation, its impact on the testimony of the witness, and its probable impact on the outcome of the trial. We will disturb the trial court's exercise of its discretion only if there is no reasonable ground for the action taken. Additionally, the trial court should consider whether the party calling the witness procured his disobedience. Further, a mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendants of a fair trial by preventing the jury from weighing and rendering a true verdict.

*Commonwealth v. Rose*, 172 A.3d 1121, 1127 (Pa. Super. 2017) (citations, quotation marks, ellipses, brackets, and paragraph breaks omitted).

In its Opinion, the trial court summarized the relevant portions of trial testimony, addressed English's claim, and concluded that it lacks merit. *See* Trial Court Opinion, 10/30/19, at 14-17. The trial court concluded that "Detective Palumbo should not have conversed with the sequestered witness [the victim] after the detective had just testified, [but] the record indicates that the conversation was innocuous and there is no evidence suggesting otherwise." *Id.* at 17. Additionally, the trial court stated that it offered, more than once, to instruct the jury to ignore the challenged testimony as lacking

evidentiary support, but that trial counsel declined. *Id.* at 15-16. From the circumstances, the alleged violation did not clearly and unavoidably deny English a fair trial. *See Rose*, *supra*. We discern no abuse of the trial court's discretion in denying a mistrial, and affirm on the basis of the trial court's Opinion with regard to this claim. *See* Trial Court Opinion, 10/30/19, at 14-17.

In his fourth claim, English avers that the trial court erred in permitting the contents of an anonymous tip into evidence, over his hearsay objection.[4] Brief for Appellant at 19. English claims that police had not identified him as a suspect until he was named in an anonymous tip. *Id.* According to English, "[t]he Commonwealth violated the preclusion order by knowingly soliciting testimony that had been precluded." *Id.* at 20. English also argues that "[t]he testimony is prejudicial to [English] because it suggests to the jury that [English] was specifically identified to police as the perpetrator by a witness other than the [victim] who testified in court." *Id.*

English again failed to adequately develop this claim for review. *See* Pa.R.A.P. 2119(a). Despite mentioning a preclusion order, English does not

---

[4] English first mentions the rule against hearsay, but proceeds to state that "the question is not whether the content of the anonymous tip were hearsay [*sic*], but rather, did the trial court violate its own order by allowing the Commonwealth to solicit the content of the anonymous tip…." Brief for Appellant at 19.

cite to the place in the record where such a ruling may be found.[5]  **See**

**Commonwealth v. Beshore**, 916 A.2d 1128, 1140 (Pa. Super. 2007)

(stating that this Court will not "scour the record to find evidence to support

an argument").  English's vague and unsupported claim is waived.  **See**

**Samuel**, **supra**; **Gibbs**, **supra**.[6]

In his fifth claim, English argues that the trial court improperly inserted

itself into the trial, and criticized his trial counsel.  Brief for Appellant at 21.

English claims that the trial court inserted itself "by cutting short witness

testimony and sternly advising trial counsel to shorten their line of

questioning, even though no objection had been made."  **Id.**  According to

English, "the hostility between trial counsel and the trial court is undeniable[,]"

and he was prejudiced as a result of the trial court's actions.  **Id.** at 22.

---

[5] The record reveals that defense counsel presented an oral Motion *in limine* during an October 29, 2018, hearing, prior to the start of trial.  **See** N.T., 10/29/18, at 8-19.  The trial court granted the Motion, holding that the Commonwealth could not admit the *contents* of the anonymous tip.  **Id.** at 18-19.  However, the court stated that testimony could reference the tip, to the extent that it explained the testifying individual's actions.  **Id.**

[6] The trial court similarly stated that English had failed "to cite where [the trial court] admitted 'the contents of an anonymous tip' that included [English's] name, and fail[ed] to allege the grounds on which the purported testimony was erroneously admitted."  Trial Court Opinion, 10/30/19, at 10. Additionally, the trial court set forth Detective Keppol's testimony, which indicated that he had obtained English's name from another detective.  **Id.** at 10-12.  The trial court also addressed English's claim, to the extent that he intended to raise a hearsay challenge.  **Id.** at 12.  Even if English had not waived his claim, we would conclude that it lacks merit for the reasons set forth by the trial court.  **See** Trial Court Opinion, 10/30/19, at 10-12.

Initially, we note that this issue, as stated in the Statement of Questions Involved, was not included in English's Pa.R.A.P. 1925(b) Concise Statement. Rather, English preserved the following claim in his Concise Statement: "The [c]ourt erred in stopping multiple witnesses while testifying, including evidence regarding strike patterns, even though there was no objection to the testimony." Concise Statement, 6/24/19, at 2 (unnumbered). English's Concise Statement does not preserve an issue concerning the trial court's alleged criticism of trial counsel; therefore, this portion of English's fifth issue is waived. **See** Pa.R.A.P. 1925(b)(4)(vii) (providing that issues not included in the Concise Statement are waived); **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (stating that "[a]ny issues not raised in a 1925(b) statement will be deemed waived.").

Regarding the remaining portion of English's claim, *i.e.*, that the trial court stopped witnesses during their testimony, the trial court stated in its Opinion that it was unable to "identify and address whatever purported errors [English] references…." Trial Court Opinion, 10/30/19, at 18. The trial court explained that English had failed to cite the portion of the transcripts where the errors occurred, or to identify how the court's rulings were erroneous. **Id.** Therefore, the trial court did not address the merits of English's claim. **Id.** Because English's vague Concise Statement prevented review by the trial court, this claim is waived. **See Commonwealth v. Dowling**, 778 A.2d 683, 686-87 (Pa. Super. 2001) (stating that "a [c]oncise [s]tatement which is too

- 10 -

vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all[,]" and deeming the appellant's claims waived because the vague concise statement hampered appellate review).[7]

In his sixth and final claim, English contends that the trial court abused its discretion by imposing a sentence outside of the Sentencing Guidelines. Brief for Appellant at 26. English points to several potentially mitigating factors, such as his "particularly harrowing childhood[,]" and history of homelessness. *Id.* at 27. English argues that the trial court did not consider the appropriate factors, and made an intentional departure from the Sentencing Guidelines. *Id.* at 28.

English's claim challenges to the discretionary aspects of his sentence, from which there is no automatic right to appeal. ***Commonwealth v. Mastromarino***, 2 A.3d 581, 585 (Pa. Super. 2010).

> We conduct a four-part analysis to determine: (1) whether the appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

---

[7] We further observe that in his appellate brief, English again failed to point to the place in the record where these alleged violations occurred. ***See generally*** Pa.R.A.P. 2119(c) (providing that "the argument must set forth … a reference to the place in the record where the matter referred to appears.").

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

Here, English filed a timely Notice of Appeal. However, English did not preserve his sentencing challenge during the sentencing hearing or in his Post-Sentence Motion. ***See*** Post-Sentence Motion, 3/2/19 (raising challenges to the sufficiency and weight of the evidence). Accordingly, English has not invoked this Court's jurisdiction, and his discretionary sentencing claim is waived. ***See Commonwealth v. Watson***, 835 A.2d 786, 792 (Pa. Super. 2003) (stating that "[i]ssues challenging the discretionary aspects of sentencing must be raised in a post-sentence motion or by raising the claim during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived. This failure is not cured by submitting the challenge in the Rule 1925(b) statement.") (citations and

quotation marks omitted).[8]

Based upon the foregoing, we affirm English's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2021

---

[8] Even if this claim were not waived, we would conclude that the trial court did not abuse its discretion, for the reasons set forth in its Opinion. *See* Trial Court Opinion, 10/30/19, at 18-20. The record reflects that the trial court was fully informed of all relevant sentencing factors (including English's extensive criminal history, as well as potential mitigating factors), and had the benefit of a pre-sentence investigation report. *See* N.T. (Sentencing), 2/22/19, at 6-18 (wherein the Commonwealth and defense counsel presented sentencing arguments; English exercised his right to allocution; and the trial court explained its reasons for imposing the sentence); *see also* ***Commonwealth v. Finnecy***, 135 A.3d 1028, 1038 (Pa. Super. 2016) (stating that "[w]here the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." (citation and quotation marks omitted)).

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0006223-2017

                                 :

VS.                              :

                                 :

DARRYL ENGLISH                   :     1208 EDA 2019

## OPINION

Darryl English ("Appellant") appeals his convictions and sentence, and this Court

submits the following Opinion pursuant to Pa. R.A.P. No. 1925, recommending that Appellant's

appeal be denied.

## **PROCEDURAL HISTORY**

On November 2, 2018, a jury convicted Appellant of aggravated assault (18 Pa. C.S.A. §

2702(a)(1)), possessing an instrument of a crime (18 Pa. C.S.A. § 907), and unlawfully

possessing a firearm as a convicted felon. (18 Pa. C.S.A. § 6105(a)(1)). The jury found

Appellant not guilty of attempted murder (18 Pa. C.S.A. § 901), carrying a firearm without a

license (18 Pa. C.S.A. § 6106), and possessing a firearm without a license on the public streets of

Philadelphia (18 Pa. C.S.A. § 6108). (N.T. 11/2/18 at 49-62).

On February 22, 2019, this Court sentenced Appellant to two consecutive terms of ten

(10) to twenty (20) years' incarceration for his convictions of aggravated assault and unlawfully

possessing a firearm as a convicted felon. This Court imposed no sentence on Appellant's

conviction for possessing an instrument of a crime, and Appellant's aggregate sentence is

therefore twenty (20) to forty (40) years' incarceration. (N.T. 2/22/19 at 17).

On March 5, 2019, Appellant filed a post-sentence motion for judgment of acquittal or a

new trial, which this Court denied on March 6, 2019. On April 9, 2019, Appellant filed a Notice

1

...л to the Superior Court,[1] and on June 24, 2019, Appellant filed a Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925(b).

## FACTS

Around 11:00 p.m. on February 22, 2017, Philadelphia Police Officer Jonathan Mangual ("Officer Mangual") was on patrol with his partner, Officer Jonathan Edmunds, when they received a report of a 911 call regarding a shooting on the 2400 block of North Patton Street in the city and county of Philadelphia, Pennsylvania. The 911 call reported a male gunshot victim being dragged by "a black male offender" toward a vacant lot. Officers Mangual and Edmund were about fifteen (15) blocks away from 2400 North Patton Street, and they responded to the location in approximately one minute. (N.T. 10/30/18 at 51-53).

Upon arriving at the location, Officer Mangual observed the shooting victim, Lamont Randell ("Mr. Randell"), laying on the sidewalk. Another male stood beside Mr. Randell and was "flagging" down the officers. Mr. Randell's face was covered in blood and he was laying next to a set of stairs near a vacant lot. (Id. at 53-54). Officer Mangual tended to Mr. Randell and transported him to Temple University Hospital. All the while, Mr. Randell bled profusely

---

[1] This Court's Order denying Appellant's post-sentence motion is dated March 6, 2019, and it was docketed on that date. However, this Court did not send Appellant's counsel any notice of the Order or a copy thereof until March 11, 2019, and there is no docket notation indicating that counsel otherwise received notice or a copy of the Order before then. Therefore, the deadline for filing an appeal was April 10, 2019, thirty days after this Court mailed Appellant's counsel a copy of the Order. See Pa. R.A.P. 108(a)(1) ("[I]n computing any period of time under these rules involving the date of entry of an order by a court or other government unit, the day of entry shall be the day the clerk of the court or the office of the government unit mails or delivers copies of the order to the parties, or if such delivery is not otherwise required by law, the day the clerk or office of the government unit makes such copies public.").

2

from his face, was "in and out of conscious," and was unable to audibly respond to Officer Mangual's questions. (Id. at 56-58).[2]

Philadelphia Police Officer Javier Montanez ("Officer Montanez") also responded to the shooting and assisted in securing the scene by placing police tape around the locations where "blood and live bullets" were found. (Id. at 82-85). The crime scene extended from 2434 Patton Street to around 2426 Patton Street, and therein Officer Montanez and his fellow officers discovered six live .22 caliber bullets in front of 2443 Patton Street and one live .45 caliber bullet in front of 2434 Patton Street. No fired cartridge casings ("FCCs") were recovered from the scene. (N.T. 10/31/18 at 136).[3] Officers also observed blood smears on the steps and sidewalk in front of 2434 Patton Street, and blood on the sidewalk beside the vacant lot near 2434 Patton Street. (Id. at 86-98).

The 36-year-old victim, Mr. Randell, testified that at the time of the shooting he had been walking to Erie Avenue after having left the home where his children resided. (N.T. 10/31/18 at 79-80). Upon reaching Patton Street, he encountered a male and a female standing together in the front doorway of a residence. Mr. Randell asked the female, who was smoking a cigarette on the step, if he could buy a cigarette from her. (Id. at 81). At this point the male stepped forward and said, "What the eff you said to my girl?" A confrontation ensued in which Mr. Randell called the male a "pussy." (Id. at 81-82). After addressing the male as such, Mr. Randell turned away from him to watch the female who was then "walking around [Mr. Randell] as if she was going

---

[2] Although Officer Mangual could not personally hear the victim responding to any questions that night, his body camera recorded Lamont Randall providing his name and stating that he did not know the person who shot him. (Id. at 64, 76).

[3] The .22 caliber bullets were recovered around twenty (20) to thirty (30) feet away from the location of the .45 caliber bullet. (N.T. 11/1/18 at 41).

3

to swing" at him. When Mr. Randell turned back to the male, he heard two gunshots and felt one bullet strike him in his left cheek. The other bullet struck his spine and paralyzed him. The next thing Mr. Randell recalls is awaking in the hospital where he remained for "months." While hospitalized, Mr. Randell identified Appellant as the shooter in a photo array on March 9, 2017, and he provided a statement to detectives on March 14, 2017. (Id. at 81-82, 89-90, 98-99).

At trial Mr. Randell again identified Appellant as the shooter. He also identified, by photograph, the doorway of the residence from which Appellant shot him. Mr. Randell testified that he saw Appellant standing in the doorway holding a black handgun in his right hand and pointing the weapon at Mr. Randell. The streetlights were lit and Mr. Randell could clearly see Appellant's face and hear the two gunshots. (Id. at 83-87). Mr. Randell further testified that he was unarmed at the time but there were bullets in the jacket he wore, which, according to Mr. Randell, belonged to a family member. (Id. at 97-98).

Detectives Ronald Palumbo ("Detective Palumbo") and Edward Keppol ("Detective Keppol") were assigned to investigate the shooting, and based on information they received from another detective (Detective Waring), these detectives soon developed Appellant as the suspected shooter. The detectives thereafter learned that Appellant resided at 2434 Patton Street – the same address where officers recovered a .45 caliber live bullet and observed blood stains on the steps and sidewalk. The detectives also obtained a photograph of Appellant. (N.T. 10/31/18 at 5-19, 144-148).[4]

---

[4] Detectives Palumbo and Keppol testified that they responded to the shooting scene after first visiting the hospital and discovering that Mr. Randell could not communicate because of his gunshot injuries. When they arrived at the crime scene, the detectives observed blood on the front steps of 2434 North Patton Street and knocked several times on the front and back doors of the residence, but nobody answered. (Id. at 5-8, 47-49, 133-134).

4

On March 9, 2017, Detectives Palumbo and Keppol elicited another detective, Detective Michael Repici, to present Mr. Randell a photo array at the hospital. Although Mr. Randell could not yet speak because his jaw remained wired shut from his injuries, he identified Appellant as the shooter by nodding his head and signing Appellant's photograph. (Id. at 55, 59; and N.T. 11/1/18 at 8, 116-120). Around one week later, on March 14, 2017, Detective Keppol obtained a formal statement from Mr. Randell in which he advised that Appellant had shot him. (N.T. 10/31/18 at pg. 15, 58-60).[5]

Detective Palumbo subsequently obtained a search warrant for Appellant's residence at 2434 Patton Street. (N.T. 10/31/18 at 15-19). Although Appellant was not home when the warrant was executed on March 31 2017, officers recovered mail indicating that Appellant lived there and that a woman named Zaaqia Badia ("Ms. Badia") received mail at the residence. (Id. at 20-21, 61). Detective Keppol received further information that Ms. Badia was with Appellant at the time of the shooting, but the detectives could not locate her. (N.T. 11/1/18 at 9).[6]

Pursuant to an arrest warrant, Appellant was taken into custody on April 2, 2017. The detectives recovered Appellant's cell phone upon his arrest and subsequently obtained search warrants for information relating to both Appellant's and Ms. Badia's cell phones. The detectives sought to learn whether Appellant and Ms. Badia made phone calls and/or text messages to each other or other persons on the night of the shooting, and to pinpoint the

---

[5] The detectives also learned that Darnell Willingham ("Mr. Willingham") was the 911 caller who reported the shooting. In his 911 call, Mr. Willingham had referenced two women and two males, in addition to Mr. Randell, who were present at the shooting. (Id. at 42; N.T. 11/1/18 at 50). The detectives took a statement from Mr. Willingham and showed him a photo array that included Appellant, but he could not positively identify Appellant as the shooter. (N.T. 10/31/18 at 9-12).

[6] The parties stipulated to the authenticity of a marriage application for Appellant and Ms. Badia dated January 6, 2017. (Id. at 87-88).

5

location(s) from which the calls/texts were made. (N.T. 10/31/18 at 25-28; N.T. 11/1/18 at 18, 84).

Regarding the cell phones, the Commonwealth presented the testimony of Detective James Dunlap, who the parties stipulated is an expert in "historical cell site analysis." Detective Dunlap explained that by examining data from cell phone towers maintained by service providers (e.g., Verizon), he can estimate the general location from which a call/text is made or received from a particular phone number. Upon analyzing the two cell phone numbers provided to him in this case – i.e., the numbers of Appellant and Ms. Badia – Detective Dunlap determined that around 11:00 p.m. on the night of the shooting, both phones were making/receiving calls and/or texts within a "square mile or two" of the shooting location. (11/1/18 at 89, 90-108). Following the shooting, the users of the two phones separated, and during the several hours thereafter one phone was used in the area of Southwest Philadelphia and the other phone was used in the area of North Philadelphia. (Id. at 108-113).

At the conclusion of the above evidence and testimony, the jury found Appellant guilty of aggravated assault and possessing an instrument of a crime, but not guilty of attempted murder, carrying a firearm without a license, and carrying a firearm on the public streets of Philadelphia. (N.T. 11/2/18 at 49-51). The parties thereafter agreed to a stipulated trial on the charge under 18 Pa. C.S.A. § 6015, pursuant to which the parties stipulated that Appellant was ineligible to possess a firearm because of a prior felony conviction. The jury found Appellant guilty on this charge. (Id. at 62).

Following a sentencing hearing on February 22, 2019, this Court sentenced Appellant to consecutive terms of ten (10) to twenty (20) years' incarceration for his convictions of

6

aggravated assault and illegally possessing a firearm. This Court imposed no sentence for Appellant's conviction of possessing an instrument of a crime. (N.T. 2/22/19 at 17).

## ISSUES

Appellant raises the following issues in his Rule 1925(b) Statement:

a.   "The evidence was insufficient to convict Defendant of all charges as there was inadequate evidence to prove beyond a reasonable doubt that Defendant was ever in possession of a firearm and multiple types of bullets were found at the scene, indicating multiple people were present."

b.   "The trial court erred as the verdict was against the weight of the evidence presented by the Commonwealth. The conviction was based solely on eyewitness testimony and hearsay with no physical evidence to corroborate."

c.   "The Court erred in admitting the contents of an anonymous tip, including Mr. English's name."

d.   "The trial court erred in allowing hearsay testimony regarding a 9-1-1 call without playing the actual phone call."

e.   "The Court erred when it denied Defendant's Motion for Mistrial when the complainant claimed he had a .45 caliber bullet lodged in his neck and after a sequestration violation where a police officer conferred with the complainant."

f.   "The Court erred in stopping multiple witnesses while testifying, including evidence regarding strike patterns, even though there was no objection to the testimony."

g.   "The Sentencing court abused its discretion in sentencing defendant to an aggregate sentence of 20-40 years incarceration where the court impermissibly considered defendant's decision to exercise his constitutional rights to a trial as evidence of his lack of remorse and where the court additionally failed to consider his background and personal characteristics, all of which indicated that the imposition of a mitigated sentence was warranted."

h.   "The trial court erred an abused its discretion in denying petitioner's post-sentencing motion where the verdict of guilt was against the weight of the evidence to such a degree as to shock the conscience, such that a new trial must be awarded to petitioner."

7

## ANALYSIS

### a-b. Whether the verdicts were against the sufficiency and weight of the evidence.

The standard for "reviewing the sufficiency of the evidence is whether reviewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Commonwealth v. Roberts, 133 A.3d 759, 767 (Pa. Super. 2016) (citations omitted here). "In applying the above test, [the Superior Court] may not weigh the evidence and substitute [its] judgment for the fact-finder," and "the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." Id. "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." Id. "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." Id. "Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." Id. "Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." Id.

Mr. Randell testified that Appellant stood in the doorway of 2434 Patton Street, pointed a black handgun at Mr. Randell, and shot Mr. Randell twice. Mr. Randell testified that the streetlights were lit and he could clearly see Appellant's face and hear the two gunshots. (N.T. 10/31/18 at 83-87). Mr. Randell identified Appellant as the shooter in the photo array provided by detectives, and he gave a statement in which he identified Appellant as the shooter. (Id. at 15, 55, 59; N.T. 11/1/18 at 8, 116-120). Mr. Randell's eyewitness testimony alone sufficed to

8

establish that Appellant shot him. See e.g. Commonwealth v. Brown, 617 Pa. 107, 150 (Pa. 2012) ("testimony of a single eyewitness, alone, [is] sufficient to convict even though it conflict[s] with other trial testimony") (citing Commonwealth v. Duncan, 473 Pa. 62 (1977)).

In addition, the detectives' testimony established that blood stains were located on the sidewalk and steps of 2434 North Patton Street, that Appellant lived at this address, that a .45 caliber live bullet was recovered in front of this residence, that several .22 caliber live bullets were recovered around 20 to 30 feet away, and that Appellant's cell phone was in the vicinity of his home at the time of the shooting. Viewed in the Commonwealth's favor, the above evidence amply sustains Appellant's convictions on the charges of aggravated assault (18 Pa. C.S.A. § 2702(a)(1))[7] and possessing an instrument of a crime (18 Pa. C.S.A. § 907).[8] Insofar as Appellant stipulated that he had a prior felony conviction that made him ineligible to possess a firearm, the evidence further sustains his conviction under 18 Pa. C.S.A. § 6105(a)(1).[9]

---

[7] "A person is guilty of aggravated assault if he ... attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." See 18 Pa. C.S. § 2702(a)(1). "Attempt, in the context of an assault, is established when the accused intentionally acts in a manner which constitutes a substantial or significant step toward perpetrating serious bodily injury upon another." Commonwealth v. Lopez, 654 A.2d 1150, 1154-1155 (Pa. Super. 1995). "The finder of fact is free to conclude that the accused intended the natural and probable consequences of his actions to result therefrom." Id.

[8] To sustain a conviction for possessing an instrument of a crime, the evidence must establish that "(1) the defendant possessed the instrument with the intent to employ it criminally; (2) the instrument is one commonly used for criminal purposes; and (3) [the] defendant possessed the instrument under circumstances not manifestly appropriate for lawful uses." Commonwealth v. Gladden, 665 A.2d 1201, 1206 (Pa. Super. 1995).

[9] A person is guilty under Section 6105(a) of the Uniform Firearms Act if he possesses a firearm despite having a prior conviction for an offense enumerated under Section 6105(b). See 18 Pa. C.S. § 6105(a).

Nor were the verdicts against the weight of the evidence. "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." Commonwealth v. Widmer, 560 Pa. 308, 319-320 (Pa. 2000). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." Id. "A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror." Id. "Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror." Id. "Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." Id.

Mr. Randell credibly testified that Appellant shot him right outside Appellant's home. Mr. Randell's trial testimony was consistent with his pretrial identifications of Appellant as the shooter. It was the jury's prerogative to accept or reject Mr. Randell's testimony and the Commonwealth's corroborative evidence. Since Appellant fails to articulate any facts in his favor that "are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice," his challenge to the weight of the evidence is meritless.

c.    **Whether this Court "erred in admitting the contents of an anonymous tip, including Mr. English's name."**

Appellant fails to cite where this Court admitted "the contents of an anonymous tip" that included Appellant's name, and fails to allege the grounds on which the purported testimony was erroneously admitted. Moreover, Detective Keppol's testimony established that the detectives pursued Appellant as the shooting suspect, by name, based on information received from Detective Waring. Detective Keppol testified:

[Commonwealth].    At some point, do you develop a suspect?

10

| | |
|---|---|
| **A.** | **Yes. Fairly quickly, yes.** |
| [Commonwealth]. | When you say fairly quickly, can you recall the timeline? |
| **A.** | **Probably the next day, I received information from - -** |
| [Defense Counsel]. | Objection. |

...

| | |
|---|---|
| [Commonwealth]. | Did you receive information? |
| **A.** | **Yes, I did.** |
| [Commonwealth]. | Who did you receive information from? |
| **A.** | **From Detective Waring.** |
| [Commonwealth]. | And do you – are you aware of where he received that information? |
| **A.** | **Yes.** |
| [Commonwealth]. | Do you know who – how he got the information? |
| [Defense Counsel]. | Objection. |
| [Commonwealth]. | I don't need the contents of it, but - - |
| The Court. | How he got it? |
| [Commonwealth]. | Yes. |
| The Court. | Too broad a question. |

...

| | |
|---|---|
| **A.** | **From the information received from Detective Waring, yes, a suspect was developed.** |
| [Commonwealth.] | Were you given a specific name? |
| **A.** | **Yes.** |

...

| | |
|---|---|
| [Commonwealth]. | What name did you get? |
| [Defense Counsel]. | Objection. |
| The Court. | Overruled. |
| **A.** | **Darryl English.** |

...

| | |
|---|---|
| [Commonwealth]. | In ... finding the name out, do you look up the name Darryl English? |
| **A.** | **Yes.** |
| [Commonwealth]. | Do you do an address check of Darryl English? |
| **A.** | **Yes.** |
| [Commonwealth]. | Do you recall when in the timeline you do that? |
| **A.** | **Probably when I received the information from Detective Waring.** |

...

| | |
|---|---|
| [Commonwealth]. | Now that you have a name, do you start coming up with a plan to put a name and an address – do you also try to attempt to find a photograph of Darryl English? |
| **A.** | **Yes.** |

...

| | |
|---|---|
| [Commonwealth]. | Once you get a name and a photograph, what do you do? |
| **A.** | **The photograph is placed into a photo array and it's shown to the complainant in this case, the victim.** |

11

(N.T. 10/31/18 at 144-147).

The above testimony reflects that this Court permitted Detective Keppol to explain what prompted the detectives' investigatory focus on Appellant. To the extent Appellant intends to argue that Detective Keppol's testimony contained hearsay vis-à-vis the information he received from Detective Waring, such argument is unavailing.

"Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. Commonwealth v. Estepp, 17 A.3d 939, 945 (Pa. Super. 2011) (citing Pa.R.E. 801(c)). "As a general rule, hearsay is inadmissible as such evidence lacks guarantees of trustworthiness fundamental to the Anglo-American system of jurisprudence." Id. "However, an out-of-court statement offered not for its truth but to explain the witness's course of conduct is not hearsay and thus, is not excludable under the hearsay rule." Id. (citing Commonwealth v. Riga, 593 Pa. 659, 693 (2007); Commonwealth v. Dargan, 897 A.2d 496, 500 (Pa. Super. 2006). The Superior Court "has repeatedly upheld the introduction of out-of-court statements for the purpose of showing that based on information contained in the statements, the police followed a certain course of conduct that led to the defendant's arrest." Commonwealth v. Underwood, 500 A.2d 820, 822-823 (Pa. Super. 1985) (citations omitted here).

Detective Keppol did not offer any testimony regarding the "content" of an anonymous tip to prove the truth of the matter asserted in the tip. Detective Keppol simply testified that based on information received from another detective, he and his partner followed a certain course of conduct that led to Appellant's arrest. Such testimony is neither hearsay nor inadmissible. See e.g. Underwood, supra.

12

**d.   Whether this Court "erred in allowing hearsay testimony regarding a 9-1-1 call without playing the actual phone call."**

Whatever issue Appellant purports to raise here should be deemed waived. "[I]t is axiomatic that issues are preserved when objections are made timely to the error or offense." Commonwealth v. Baumhammers, 599 Pa. 1, 23-24 (2008); Pa. R.A.P. 302(a). The "failure to offer a timely and specific objection results in waiver of the claim." Id.

Trial in this case lasted around four (4) days, involved multiple witnesses, and resulted in a few hundred pages of transcribed witness testimony. Yet Appellant fails to identify in the transcripts where his counsel objected to the alleged hearsay testimony and/or requested the playing of the 911 call, and he fails to identify where this Court overruled any pertinent objection or denied any request to play the 911 call.

"When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." Commonwealth v. Reeves, 907 A.2d 1, 2 (Pa. Super. 2006) (citations omitted here). "When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." Id. "In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." Id.

Because Appellant completely fails to identify the specific rulings which he purports were erroneous, this issue should be deemed waived.

Moreover, the record reflects that Appellant's counsel had elicited detailed testimony regarding the content of the 911 call, including testimony about a written report summarizing the 9-1-1 call. (See e.g., N.T. 11/1/18 at 72-78). It therefore was Appellant who elicited the

13

evidence which he now apparently claims was erroneously admitted, and whatever challenge he purports to assert in his Rule 1925(b) Statement is accordingly meritless.

e. **Whether this Court "erred when it denied Defendant's Motion for Mistrial when the complainant claimed he had a .45 caliber bullet lodged in his neck and after a sequestration violation where a police officer conferred with the complainant."**

"The decision to declare a mistrial is within the sound discretion of the court and will not be reversed absent a flagrant abuse of discretion." Commonwealth v. Bracey, 831 A.2d 678, 682 (Pa. Super. 2003) (citations omitted here). "A mistrial is an extreme remedy that must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial." Id. (citations omitted here). "A trial court may remove taint caused by improper testimony through curative instructions." Id. "Courts must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required." Id.

During trial counsel's cross-examination of Detective Keppol, the detective testified that Mr. Randell had stated that he had a .45 caliber bullet lodged in his neck. After counsel elicited this testimony, counsel requested a mistrial and this Court denied the request. Counsel then continued questioning Detective Keppol about his conversation with Mr. Randell, which occurred the previous day in the Court's witness sequestration room, regarding the bullet lodged in his neck. Among other things, Detective Keppol testified that Mr. Randall had said it was his "doctor" who advised that he had a .45 caliber bullet in his neck:

| [Defense Counsel]. | The doctor told him, the doctor? |
|---|---|
| **A.** | **That's correct.** |
| [Defense Counsel]. | Is that the surgeon? |
| **A.** | **That's what he told me. I don't know if it was the surgeon, if it was an ER doctor. I talked to him yesterday and asked him how he was feeling and he told me – he said, 'I still have a bullet in my neck. It's a .45 caliber bullet and if it goes a** |

14

|                    | certain way or if I get hit there, it's going to hit my jugular and I could die. |
|--------------------|------------------------------------------------------------------------------|
| [Defense Counsel]. | And so the .40 — he represented to you that the .45 caliber bullet remains in his body, yes? |
| A.                 | Yes. |
| [Defense Counsel]. | And that a doctor, not a ballistician, not a firearms expert, a doctor looked in and said, I recognize that caliber of bullet? |
| A.                 | **I didn't say that. I said what he told me.** |
| [Defense Counsel]. | That's what he told you? |
| A.                 | **He told me he has a .45 caliber bullet in the neck and that the doctor told him.** |
| [Defense Counsel]. | Okay. |
| A.                 | **That's the end of the story.** |

(N.T. 11/1/18 at 34-36).

Trial counsel argued that Detective Keppol's above testimony was an unfair surprise because counsel was unaware of the detective's conversation with Mr. Randall, and because there was no ballistics evidence supporting that Mr. Randell was shot with a .45 caliber bullet. (Id. at 132-140). Trial counsel's argument, and appellate counsel's renewal of that argument, is meritless.

This Court ruled that trial counsel could produce witnesses and other relevant evidence concerning the caliber of bullet that struck Mr. Randell, and concerning the validity of Mr. Randell's above testimony that counsel elicited. This Court furthermore offered to instruct the jury that it must disregard Detective Keppol's testimony regarding the caliber of bullet in Mr. Randell's neck because the testimony had no evidentiary support. As this Court explained, defense counsel declined these offers:

> And let's just go on the record. We had a sidebar conversation yesterday whereby the defense objected to the detective's testimony that Mr. Randell told him yesterday that he still had a .45 caliber bullet lodged in his neck. The detective testified to that in front of the jury. In remedy, I offered to instruct the jury that they are not to – that they are to disregard that testimony as not having been proven by evidence in this case.

15

This morning, I again asked counsel if - for the defense if she would like to have that instruction read to the jury. Counsel for the defense said no, that based on tactical reasons, she would rather not have that reiterated to the jury.

...

And in regard to the motion [for mistrial], I think we discussed that at sidebar also, so we'll put it on the record. What I ruled was that you could certainly bring that or any other detective on the stand to testify as to the validity of that statement, that although I had limited your cross-examination of detectives during the course of the trial in regards to ballistics, that I would not lift that limitation and you could cross-examine the detectives or bring them on your own case or the DA could put them back on and question them in regard to the .45 caliber bullet. In the end, what happened is that Commonwealth brought in the FIU examiner as part of the Commonwealth's case and you were given latitude to cross-examine on that issue, so I denied the motion for mistrial.

(N.T. 11/2/18 at 40-41).

In the circumstances outlined above, a mistrial over Detective Keppol's testimony, which trial counsel herself developed in her cross-examination, plainly was not merited. Bracey, 831 A.2d 678, 682 ("A mistrial is an extreme remedy that must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial.").

Trial counsel relatedly argued that a mistrial was warranted because Detectives Keppol and Palumbo had spoken with Mr. Randall before Mr. Randall testified but after Detective Palumbo testified, in violation of this Court's sequestration order. Detective Keppol described the scope of the conversation as follows:

| [Defense Counsel]. | ... Why[sic] the three of you were in that room, why[sic] your fellow detective was joining you in that room. What was discussed? |
|---|---|
| A. | **I just explained to you what was discussed. We went in there with the district attorney. We talked to the complainant in this case asking him how he's doing, how he was feeling, and that's when he told us about the .45 caliber bullet in his neck, right? The district attorney started to ask him what happened, you know, what happened the night that it happened that he got shot, and then he started to tell us what happened.** |
| [Defense Counsel]. | All three of you? |

16

| A. | In the beginning, yes. |
|---|---|
| ... | |
| [District Attorney]. | And when we went into the room the other day to speak to Mr. Randell, did Mr. Randell even know why he was here today? |
| A. | No. |
| ... | |
| [District Attorney]. | No one told the witness how to testify yesterday, correct? |
| A. | No. |
| [District Attorney]. | Nor did anyone discuss their testimony with the witness yesterday, correct? |
| A. | **No one discussed their testimony.** |

(N.T. 11/1/18 at 55-56, 81-82).

"The remedy of a mistrial is an extreme one and is required only when an incident is of such a nature that its unavoidable effect deprives a defendant of a fair and impartial trial." Commonwealth v. Rashid, 160 A.3d 838, 847 (Pa. Super. 2017). Although Detective Palumbo should not have conversed with the sequestered witness (Mr. Randell) after the detective had just testified, the record indicates that the conversation was innocuous and there is no evidence suggesting otherwise. The record simply does not support any inference that the conversation's unavoidable effect was the deprivation of Appellant's right to a fair and impartial trial, and this Court therefore properly denied Appellant's mistrial motions.

f. **Whether this Court "erred in stopping multiple witnesses while testifying, including evidence regarding strike patterns, even though there was no objection to the testimony."**

Whatever issue Appellant purports to raise should be deemed waived. "An appellant's concise statement must properly specify the error to be addressed on appeal." Commonwealth v. Jackson, 2019 Pa. Super. 221 (Pa. Super. 2019) (citations omitted here). "In other words, the Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal." Id. "A concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise

17

statement at all." Id. "The court's review and legal analysis can be fatally impaired when the court has to guess at the issues raised." Id. "Thus, if a concise statement is too vague, the court may find waiver." Id.

Here, Appellant fails to inform this Court of its alleged errors. Appellant neither identifies in the transcripts where the alleged errors occurred, nor alleges how this Court's rulings were erroneous. This Court therefore cannot identify and address whatever purported errors Appellant references, and his inexcusably vague claim should be deemed waived.

g.    **Whether this Court abused its discretion in sentencing Appellant to twenty (20) to forty (40) years' incarceration.**

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." Commonwealth v. Zirkle, 107 A.3d 127, 132 (Pa. Super. 2015) (citations omitted here). "In this context, an abuse of discretion is not shown merely by an error in judgment." Id. "Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." Id. "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion." Commonwealth v. Perry, 612 Pa. 557, 565 (2011). "In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing judge's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference." Commonwealth v. Andrews, 720 A.2d 764, 768 (Pa. Super. 1998).

When imposing sentence, this Court was required to "consider the factors set out in 42 Pa. C.S.A. § 9721(b), that is, the protection of the public, gravity of the offense in relation to

18

impact on victim and community, and rehabilitative needs of the defendant...." Commonwealth v. Shugars, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citations omitted here). This Court also was required to "consider the sentence ranges set forth in the Sentencing Guidelines, but it [was] not bound by the Sentencing Guidelines." Commonwealth v. Sheller, 961 A.2d 187, 190 (Pa. Super. 2008). "It is well established that the Sentencing Guidelines are purely advisory in nature." Id. (quoting Commonwealth v. Yuhasz, 923 A.2d 1111, 1118 (Pa. 2007)); Commonwealth v. Walls, 592 Pa. 557 (Pa. 2007). Furthermore, this Court was "required to consider the particular circumstances of the offense and the character of the defendant." Commonwealth v. Dotter, 589 A.2d 726, 730 (Pa. Super. 1991).

"Where pre-sentence reports exist," appellate courts "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." Commonwealth v. Devers, 519 Pa. 88, 101-102 (1988). "A pre-sentence report constitutes the record and speaks for itself." Id. at 102. "[S]entencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure." Id. "Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed." Id. "This is particularly true ... in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there [courts] will presume also that the weighing process took place in a meaningful fashion." Id.; see also Commonwealth v. Best, 120 A.3d 329, 348-349 (Pa. Super. 2015) (quoting Devers, supra).

Here, the record confirms that before imposing sentence this Court had closely considered Appellant's presentence report, his criminal history, his failures to rehabilitate, and his conduct in this case. (N.T. 2/22/19 at 13-18). Appellant's abysmal criminal history includes

19

multiple arrests and four (4) adjudications as a juvenile, and no less than thirteen (13) arrests and four (4) convictions as an adult. (Id.). One of Appellant's prior convictions involved, like this case, his shooting another person in the face. Moreover, while incarcerated pending the instant trial, Appellant committed multiple disciplinary infractions and thus has displayed zero intention to rehabilitate. (Id.).

Appellant is a repeat violent offender who shot Mr. Randell pointblank in the face, paralyzing him likely for life. In light of Appellant's heinous conduct in this case, together with his penchant for violent crime and wholesale disregard of its effect on his victims and community, this Court's sentence of 20 to 40 years' incarceration is thoroughly justified.[10]

## CONCLUSION

For the reasons set forth in the foregoing Opinion, this Court's judgment of sentence should be affirmed.

BY THE COURT:

DATE: 10/28/14

SUSAN I. SCHULMAN, J.

---

[10] Appellant's final claim of error, which is listed in subparagraph "h" of his Rule 1925(b) Statement, challenges the weight of the evidence. This claim is redundant to the claim asserted in subparagraph "b" and is meritless for the same reasons set forth above.

## PROOF OF SERVICE

I, Darece Williford, secretary to Honorable Susan I. Schulman, hereby certify that I

served, on October 30, 2019 by First-Class and Inter-Office mail, a true and correct copy of

the foregoing Order on the following:

Melissa Thomas, Esquire
Thomas & Robbins, LLC
100 S. Broad Street, Suite 715
Philadelphia, Pennsylvania 19110
*(Inter-Office Mail)*


Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
*(Inter-office mail)*

Darece Williford
Darece Williford